THE STATE, EX REL., PHILANDER S. PIERSON, COLLECTOR OF ESSEX COUNTY v. BAILEY B. DOUGLASS, RECEIVER OF TAXES OF THE CITY OF NEWARK.

An interpretation of a special law, having for its object the collection of a special poll tax, should not be adopted, which will interfere with the purpose of a general law, unless there is the clearest language to justify it.

On motion for peremptory *mandamus*.

On the hearing of this motion it was agreed that the following state of the case should be taken as a return to an alternative *mandamus*.

1. By section fourth of the act of February 28th, 1865, (*pro ut* the same) ratifying the issuing of war bonds by the county of Essex, (*Pamph. L., ch.* 101, *p.* 192,) it is enacted, "that for the purpose of providing a fund in aid of the payment of said bonds, a poll tax of five dollars shall be assessed upon every white male inhabitant of said county of Essex, of the age of twenty-one years and upwards, which tax shall be assessed and collected in the same manner as the poll tax is assessed and collected under the general law of the state, and shall be an addition thereto."

2. By a supplement to said act, passed March 27th, 1867, (*Pamph. L., ch.* 217, *p.* 461,) said poll tax was reduced to *three* dollars.

3. By a supplement to the charter of the city of Newark, passed March 10th, 1859, (*Pamph. L., ch.* 164, *p.* 476,) the office of "Receiver of Taxes" was created in place of ward collector, and that officer was thereby made collector of taxes for the whole city.

4. The defendant has been, for more than a year last past, and is now receiver of taxes for said city, and the relator is now, and has been for more than a year last past, collector of said county of Essex.

State, ex rel., Pierson, Col. of Essex Co., v. Douglass, Rec'r Taxes, Newar".

5. Of the state and county taxes (including said special poll tax,) assessed in the city of Newark, in the year 1868, there remains unpaid, to the county collector aforesaid, the sum of (estimated) sixteen thousand dollars, of which sum (as estimated) four thousand dollars is for general poll taxes, and the residue is for special county poll taxes, which deficiency, or unpaid taxes, the defendant refuses to pay over to the relator, because, as is admitted for the purpose of this application to be the fact, said general and special poll taxes have not, as yet, been collected, and may not be collected, in consequence of the insolvency or removal of the persons on whom they were assessed, although the time for the payment of the same to the relator has elapsed, and the defendant has in his hands other taxes collected by him for city purposes, out of which said deficiency might be paid.

6. It is admitted that a legal and sufficient demand has been made for the payment of said taxes to the relator, and that the defendant has refused to pay the same.

7. It is agreed, that if the court, upon the foregoing state of the case, and upon the law applicable thereto, shall be of the opinion that the defendant is legally bound to pay to the relator all, or any part of said taxes so withheld, a *mandamus* shall issue to enforce payment accordingly.

Dated February 22d, 1869.

JOHN W. TAYLOR,
*Attorney for relator.*

JOHN P. JACKSON,
*Attorney for defendant.*

The opinion of the court was delivered by

VAN SYCKEL, J.   Two questions are submitted to the judgment of the court.

*First.* Whether the loss of general poll tax must fall upon the county and state.

*Second.* Whether a peremptory *mandamus* should issue to the city receiver to pay the special poll tax to the county

collector, admitting that it has not been, and cannot be collected by the city.

The application for a *mandamus* not being based upon the refusal or neglect on the part of the city receiver of taxes to employ all proper and lawful means at his command to collect the special tax in question, it will be presumed for the purposes of this case, that the city receiver is in no fault in that respect.

At the time of the passage of the act authorizing this special poll tax, February 28th, 1865, the general tax laws of this state did not give to the general county and state quotas the right of priority in payment.

It was the duty of the township collector to pay the county and state taxes to the county collector, from time to time, as he received them. *Nix. Dig.* 941, § 24.*

This law led to a dilatory and irregular payment of the state and county revenues, and the result was an inability on the part of the state and county authorities, to meet the expenses of government as promptly as was necessary.

The act of April 11th, 1866, supplied the legislation designed to remedy this mischief.

The twenty-fifth section of that act provides that the township, city, or ward collectors shall pay out of the first moneys which shall be collected by them, to the county collector, the state and county taxes required to be assessed in the several townships, cities, or wards, at the time required by law to pay the same. This provision postpones the right of the township, city, or ward to use for its own purposes any of the moneys raised by a given assessment, until the revenues of the state and county are supplied, and clearly requires the township collector to pay the general county and state quotas out of the first moneys which come to his hands, making no distinction whether those moneys are raised from the general polls or from property, or partly from one and partly from the other, but in no case is the township liable to pay until moneys come to hand from one or the other, or both of the two subjects of taxation, the polls and property.

*Rev.*, p. 1144, § 24.

State, ex rel., Pierson, Col. of Essex Co., v. Douglass, Rec'r Taxes, Newark.

The loss of general polls or of property taxes cannot be thrown upon the county or state where a sufficient amount is raised from either or both sources to satisfy the county and state quotas. Any other application of this legislation would afford but a partial remedy.

The legislature, in making this provision, must have had in view the fact, that the loss to the county and state resulted chiefly from the non-collection of the general polls, and the requirement to pay the state and county, out of the first moneys collected, being general and without limitation, was intended to give relief co-extensive with the mischief. This construction of the words "out of the first moneys which shall be collected by them," shows clearly that the twenty-fifth section of the act of 1866, was not intended to apply to the special tax in question. The general county and state taxes are sums in gross which the township is required to assess in connection with the necessary local taxes, upon polls and property, and out of the moneys raised, the state and county are entitled to priority in payment, but the state and county will fail of their revenues to the extent that the township fails to collect money sufficient to pay them, for in no event is the township liable to pay the county collector more money than is actually received.

The said special tax, however, is to be made exclusively of the polls, no other way is provided by which the township may make it. To hold that the county is entitled to that tax before it is received by the township, from the source provided by law for making it, imposes a greater burthen on the township than is imposed by the general tax.

The act of 1865 makes this special tax a burthen upon polls alone, and not upon property, but if it is treated as a part of the general county tax quota, it will be entitled with it to payment out of the first moneys collected, and thus by absorbing funds raised by taxation of property, shift the burthen from the polls, and delay, and to a certain extent, endanger the payment of the general county and state taxes. The policy of the general tax law of 1866, is to subject the

moneys that come to the township collector's hands, primarily to the payment of the general county and state quotas, to the exclusion of all other claims, until they are fully met. An interpretation of a special law, having for its object the collection of a special poll tax, should not be adopted, which will interfere with the purpose of the general law, unless there is the clearest language to justify it.

The fourth section of said special act enacts that the special tax "shall be assessed and collected in the same manner as the poll tax is assessed and collected under the general law of the state, and shall be in addition thereto."

The object of this provision is, to save the expense and trouble of a separate assessment, and there is no doubt that the words, "the general law of the state," mean the general law in force at the time such special tax is assessed.

It is insisted that the words "and shall be in addition thereto," completely identifies this special poll tax with the general poll tax, but these words were evidently introduced to exclude the construction that no other poll tax should be imposed in the county of Essex.

It is also urged that the expression, "in the same manner," controls the whole process of assessing and collecting the tax until it comes into the hands of the county collector, and therefore requires that it shall be paid over to him, whenever the general poll tax is payable.

The general poll tax is not paid to the county collector as poll tax, but the gross sum ordered to be raised by the township for county and state purposes, whether made of polls or property, is paid to the county collector. The county collector has no claim whatever for the general quota, upon the general poll tax, when it comes to the township collector's hands, in its distinctive character as poll tax ; he has his claim simply upon the first moneys, without any reference to the source from which they are realized.

It is otherwise with regard to the special poll tax. That retains its distinctive character when collected, and when received by the township, it must go exclusively in the chan-

nel directed by the special act; it could not be appropriated to the payment of the general county and state quotas.

The special act in question does not authorize a gross sum to be raised in aid of the payment of the Essex county bonds, but requires a special poll tax of three dollars to be assessed on every white male inhabitant of the county. The legislature, in passing this act, must have had in view the fact, that in very many cases this special poll tax would not be collected, and as they failed so specify any sum in gross, which should annually be raised, the intention of this act must have been to aid the county to such an extent only as this special tax could be collected. There is an entire absence of any expression which shows that it was intended to burthen property with it. If insufficient aid is given to the county, it is the fault of the law, not of the township. It would be exceedingly onerous to the townships to impose upon them the burthen of paying money which they have no adequate means of making.

The city receiver having used all means at his command to collect the special tax, is in no fault; the tax must be collected before the city is fixed with liability to pay it, and it can be collected only of the polls.

A *mandamus* must issue to the city receiver, to pay the balance due upon the general state and county quotas, but must be denied as to the special tax.

CITED *in State, Gorrum, pros.,* v. *Mills,* 5 *Vr.* 180.